UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BRIAN MACINEIRGHE, IAN MACINEIRGHE
and TOMAS MACINEIRGHE,

                                   **ORDER**
               Plaintiffs,        13-cv-1512(ADS)(SIL)

    -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, JONATHAN C.
ALLEN, JAMEL BOSWELL, PETER HANSEN,
CHARLES GAMBINO, JOHN DIFFLEY,
MARK BENDETTI, CHRISTOPHER ANSKAT,
CRAIG KNUDSEN, NORTH SHORE LONG
ISLAND JEWISH HEALTH SYSTEM INC.,
SOUTHSIDE HOSPITAL, CESAR GREGORIO
BENAVIDES and MIGUEL GONZALEZ,

              Defendants.
------------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

Presently before the Court in this civil rights action is a motion by Plaintiffs Brian Macineirghe ("Brian"), Ian Macineirghe ("Ian"), and Tomas Macineirghe ("Tomas", together with Brian and Ian, "Plaintiffs" or the "Macineirghes"), brought by Order to Show Cause ("OTSC"), DE [55], seeking to: (1) compel the production of surveillance footage alleged to be relevant to Plaintiffs' underlying claims; (ii) modify the scheduling order to permit Plaintiffs to conduct a deposition relating to the surveillance footage; and (iii) impose sanctions in the form of an adverse inference jury instruction for the alleged spoliation of evidence, in the event the surveillance footage no longer exists. The OTSC is directed at Defendants North Shore Long Island Jewish Health System Inc. ("LIJ"), Southside Hospital, Cesar

1

Gregorio Benavides and Miguel Gonzales (collectively, the "Hospital Defendants"). On March 18, 2015, the Hospital Defendants submitted opposition to the OTSC, DE [62]. The remaining Defendants, County of Suffolk, Suffolk County Police Department, Suffolk County Sheriff's Department, Jonathan C. Allen, James Boswell, Peter Hansen, Charles Gambino, John Diffley, Mark Bendetti, Christopher Anskat, and Craig Knudsen (collectively, the "County Defendants") did not oppose the OTSC. For the reasons set forth below, the OTSC is granted in part and denied in part.

I. **Background**

Unless otherwise noted, the following facts are drawn from the Complaint ("Compl."). Plaintiffs are individuals who, at all relevant times, resided in East Islip, New York. *See* Compl. ¶ 5. Brian and Ian are brothers; Tomas is their father. *See id.* ¶ 45. Defendant Southside Hospital is a private hospital in Bay Shore, New York. *See id.* ¶ 21. Defendants Benavides and Gonzales were employed by Southside Hospital at the time of the complained-of events. *See id.* ¶¶ 22-23. The County Defendants consist of a municipality, its police and sheriff's departments, and several individual members thereof. *See id.* ¶¶ 6-16.

According to the Complaint, on Friday March 23, 2012, Brian was waxing his car in the backyard of Plaintiffs' property located at 27 Irish Lane, East Islip, New York (the "Premises"). *See id.* ¶ 29. Ian and Tomas were inside the residence on the Premises at the time. *See id.* ¶ 38. At approximately 1:30 p.m., though Brian "w[as] not acting in an unlawful and/or unreasonable manner," Defendants Allen

2

and Boswell, together with "other members of the Suffolk County Police Department, unlawfully entered upon the [Premises] without warrant and or justification." *Id.* ¶¶ 30-31.

While on the Premises, Defendants Allen and Boswell, together with others, "threatened, harassed, attacked, punched and/or kicked" Brian "without legal justification and/or lawful reason." *Id.* ¶ 32. Plaintiffs allege a litany of actions by Defendants Allen and Boswell, and others, including: "charg[ing] at" Brian and "slam[ing him] onto the hood of his automobile," *id.* ¶ 33; "handcuff[ing]" Brian and "plac[ing him] under arrest without reason, legal justification and/or probable cause," *id.* ¶ 34; "punch[ing] and/or otherwise str[iking]" Brian while his hands were handcuffed behind his back, *id.* ¶ 35; and "threaten[ing] to 'taze' Brian and cause other bodily harm" to him, *id.* ¶ 36.

Upon hearing Brian "plead[ing] for someone to help him," Ian and Tomas responded and "continually asked why [Brian] was being placed under arrest." *Id.* ¶¶ 38-39. Plaintiffs claim that they did not "threaten, attack and/or act aggressively toward" any of the County Defendants. *Id.* ¶ 40. Defendants Hansen, Gambino, and other members of the County Police Department subsequently arrived at the Premises. *See id.* ¶ 41. Brian was placed under arrest, placed into a police car, and transported to Southside Hospital. *See id.* ¶¶ 42-43. According to Plaintiffs, the County Defendants "refused to inform Ian and Tomas where they were taking Brian." *Id.* ¶ 44.

Thereafter, Ian and Tomas learned that Brian had been taken to Southside Hospital and traveled there. *See id.* ¶ 45. Ian and Tomas entered the hospital and were given "visitor" passes. *See id.* ¶ 47. Upon entering, Ian and Tomas "found Brian seated in the hospital handcuffed to a chair rail, bleeding and under the control and supervision of [Defendants] Allen, Boswell, Anskat, Hansen, Gambino and other members of the Suffolk County Police Department." *Id.* ¶ 49. The County Defendants continually refused to inform Tomas why Brian had been arrested and why he was bleeding. *See id.* ¶ 50.

Plaintiffs claim that "Ian and Tomas attempted to leave [Southside Hospital] under their own power" but that they were followed into the hospital's parking lot by Defendant Boswell and others, and Tomas was "placed under arrest and handcuffed without warrant, probable cause or justification." *Id.* ¶ 52. Similarly, when Ian attempted to exit the parking lot in his vehicle, he "was unlawfully and without probable cause stopped, searched and subsequently handcuffed and placed under arrest by [Defendant] Knudsen and other members of the Suffolk County Police Department." *Id.* ¶ 53. The Macineirghes were all "held and unreasonably, unjustifiably and unlawfully imprisoned by" the County Defendants. *Id.* ¶¶ 57-58.

Plaintiffs allege that certain oral and written statements, including arrest reports, felony complaints, prosecution worksheets, and misdemeanor information sheets, were made by the County Defendants in connection with Plaintiffs' arrest and subsequent prosecution. *See id.* ¶ 59. In addition, Plaintiffs allege that oral and written statements were made by the Hospital Defendants, including

4

Defendants Benavides and Gonzalez, in connection with Plaintiffs' arrest and prosecution. *See id.* ¶ 60. Specifically, Plaintiffs allege that members of the Suffolk County Police Department "instructed and/or conspired with" the Hospital Defendants "as to what to write on certain criminal complaints, court depositions and other statements." *Id.* ¶ 61.

The criminal prosecution commenced against Brian was "removed from the [Suffolk County] District Court Calendar and/or dismissed without notification to" Brian or his counsel. *Id.* ¶ 66. The criminal prosecutions commenced against Tomas and Ian were "dismissed as facially insufficient by the [Suffolk County] District Court." *Id.* ¶¶ 67-68.

Based on these events, Plaintiffs assert various causes of action against the County Defendants, including claims under 42 U.S.C. § 1983 for excessive force, false arrest, false imprisonment, malicious prosecution, and other civil rights violations. As against the County Defendants, Plaintiffs also allege claims of common law assault and battery, and violations of their rights under the United States and New York constitutions. As against the Hospital Defendants, Plaintiffs assert causes of action for libel, slander, negligence, conspiracy, and falsification of a document, all arising from the oral and written statements made by the Hospital Defendants, and Benavides and Gonzales specifically, in connection with the complained-of events.

## II. Procedural Posture

By electronic Order dated June 6, 2014, Magistrate Judge William Wall approved a deadline of July 11, 2014, for the completion of discovery and directed that any party planning to make a dispositive motion was required to take the first action beginning the motion practice on or before July 23, 2014. On July 21, 2014, the Hospital Defendants did so by filing a Rule 56.1 Statement, DE [30].

On July 31, 2014, the matter was reassigned from Magistrate Judge Wall to the undersigned.

On October 6, 2014, following a pre-motion conference with Judge Spatt, the Hospital Defendants moved for summary judgment, DE [46]. On or about November 24, 2014, Plaintiffs submitted opposition, DE [52, 53], and the Hospital Defendants submitted a reply on December 8, 2014, DE [54].

### A. The Instant Motion

While the motion for summary judgment was pending before Judge Spatt, Plaintiffs filed the instant motion, DE [55]. As noted above, the instant motion principally seeks surveillance footage taken in and around Southside Hospital on the date and time of the complained-of events. *See* Affirmation in Support of Motion to Compel by Timothy Kilgannon, Esq., dated February 11, 2015 (the "Kilgannon Aff.") ¶ 9. Plaintiffs claim that the footage "would show that the Plaintiffs were in fact treated improperly, were not causing a commotion at the hospital and, as a result, were improperly arrested and prosecuted." *Id.* ¶ 14. According to Plaintiffs, they moved for this relief by OTSC because if the Hospital

6

Defendants' motion for summary judgment were granted before the footage was produced, "the plaintiffs [would] have no legal remedy to obtain the video that exists[,] which will adversely affect [their] prosecution of [their] case." *Id.* ¶ 7.

Plaintiffs claim that the footage they seek exists because on April 11, 2012, in response to a subpoena, the LIJ Office of Legal Affairs stated that "[t]he Hospital has preserved and secured video footage of the emergency room treatment area where [Brian] was treated during the specified time period." *See id.*, Ex. "A" (hereinafter, the "April 11 Letter"). Based on this representation, Plaintiffs believed that the Hospital Defendants would produce the footage during discovery in this action. However, it appears that at some point thereafter, the Hospital Defendants retracted their firm assurance that the footage had been preserved, and advised Plaintiffs that the video referenced in the April 11 Letter could not be found, but that a diligent search was underway to locate it. *See id.* ¶ 12. It appears that Plaintiffs continued to wait for a definitive response from the Hospital Defendants as to the whereabouts of the footage, but as recently as March 5, 2015 the Hospital Defendants had not provided one.

Thus, to the extent the surveillance footage has been lost or destroyed, Plaintiffs seek alternative relief in the form of: (i) permission to depose the author of the April 11 Letter—specifically, to inquire into why she stated that the video had been preserved and secured if it in fact is lost or destroyed; and (ii) sanctions in the form of an adverse inference jury instruction based upon the Hospital Defendants' alleged spoliation of the video evidence.

The Court held a hearing on March 5, 2015. At the hearing, counsel for the Hospital Defendants confirmed that "[t]he [surveillance] footage [Plaintiffs are] requesting, while the [April 11] letter said it was preserved, was either lost or failed to be preserved." However, counsel requested that the Court set a briefing schedule or hold the OTSC in abeyance, pending a comprehensive search by Southside Hospital for the footage. Counsel represented that if, after performing such a search, the Hospital Defendants could not locate the footage, they would execute an affidavit "indicating that the footage has been lost or that they failed to preserve it. . . ." The Court granted the application and set a briefing schedule on the OTSC, noting that an evaluation of the merits of Plaintiffs' request for the surveillance footage would be rendered moot by a sworn statement from the Hospital Defendants that it no longer exists. The County Defendants took no position at the hearing.

The Hospital Defendants submitted opposition to the OTSC on or about March 18, 2015, which, among other things, included a sworn affidavit from Robert Laboy, a Security Supervisor for Southside Hospital. *See* Affirmation in Opposition to Plaintiffs' Order to Show Cause by Aviva Stein, Esq., dated March 12, 2015 (the "Stein Aff."), Ex. "B" (Laboy Affidavit) at ¶ 2. Laboy states that "[i]n April of 2012, it was requested that [he] save security footage from March 23, 2012. Upon information and belief, [he] saved footage from March 23, 2012 to a CD[,] however the CD was inadvertently lost or misplaced and can not [*sic*] be located." *Id.* ¶ 3.

### III. Legal Standard

#### A. Modification of the Scheduling Order

A party may take the deposition of any person without leave of court, subject only to limited exceptions not applicable here. *See* Fed. R. Civ. P. 30(a).[1] However, an existing discovery schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4), "'Whether good cause exists turns on the diligence of the moving party.'" *Cohen v. G&M Realty, L.P.*, 13-CV-5612, 2015 U.S. Dist. LEXIS 31293, at *12 (E.D.N.Y., Mar. 13, 2015) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Lamothe v. Town of Oyster Bay*, 08-cv-2078, 2011 U.S. Dist. LEXIS 120843, at *15-*16 (E.D.N.Y., Oct. 19, 2011) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 05 Civ. 3749, 2009 U.S. Dist. LEXIS 72659, at *24 (S.D.N.Y., Aug. 17, 2009)).

#### B. Spoliation Sanctions

"'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *In re Estate of Jackson v. County of Suffolk*, CV 12-1455, 2014 U.S. Dist. LEXIS 46521, at *11 (E.D.N.Y., Mar. 31, 2014), *adopted by* 2014

---

[1] Under Rule 30(a)(2), a party only needs leave of court to conduct a deposition if the parties do not stipulate to the deposition and one of the following conditions is met: (i) the deposition would result in one of the parties having taken more than 10 depositions under Rule 30; (ii) the deponent has already been deposed in the case; or (iii) the deposition is sought prior to the time specified in Rule 26(d), unless the party certifies that the deponent is leaving the country and will be rendered unavailable for a deposition after that time. *See* Fed. R. Civ. P. 30(a)(2)(a)(i)-(iii).

9

U.S. Dist. LEXIS 96355 (E.D.N.Y., July 15, 2014) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Under Rule 37(b), "[a] court may impose sanctions against a party who spoliates evidence," *id.* at *11-*12 (citation omitted), and "district courts have broad discretion in 'crafting an appropriate sanction'" for such conduct. *Id.* *12 (quoting *West*, 167 F.3d at 779); *see Riley v. Mariott Int'l, Inc.*, 2014 U.S. Dist. LEXIS 135728, at *12 (W.D.N.Y., Sept. 25, 2014) (noting that under Rule 37 "courts have broad discretion to sanction a party for failing to produce or destroying relevant and discoverable evidence."). The standard for spoliation is well-settled:

> A party seeking sanctions has the burden of establishing "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Id.* at *13-*14 (quoting *Residential Fencing Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002)); *see Riley*, 2014 U.S. Dist. LEXIS 135728, at *7 (reciting *Residential Fencing* standard with approval). "A [spoliation] sanction in the form of an adverse inference instruction is, however, 'an extreme sanction and should not be imposed lightly.'" *Id.* at *13 (quoting *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008)); *see Mixon v. Pride & Joy Miami, LLC*, 13 cv. 5534, 2015 U.S. Dist. LEXIS 38998, at *17 (S.D.N.Y., Mar. 23, 2015) (identifying an adverse inference jury instruction as among the harshest remedies available for discovery violations).

A threshold question is presented, however, under the Federal Magistrates Act, which authorizes magistrate judges to hear and determine "pretrial matter[s] pending before the court." 28 U.S.C. § 636(b)(1)(A). The statute distinguishes "dispositive" matters (for which magistrate judges require either the parties' consent or referral from the district judge to resolve) and "nondispositive" matters (for which they do not). *See id.* The Second Circuit has noted that the list of dispositive matters included in the statute is non-exhaustive, *see Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cit. 2008) (citations omitted), but that "[m]atters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citation omitted). And, while "sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, . . . the imposition of certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive'. . . ." *Id.* (citations omitted). Indeed, in the Second Circuit, the degree to which a magistrate judge is empowered to issue sanctions for spoliating evidence is largely unsettled. As Judge Bianco explained in *Estate of Jackson*, 2014 U.S. Dist. LEXIS 96355 at *8-*9, "[i]n *Kiobel v. Millson*, 592 F.3d 78, 84-105 (2d Cir. 2010), the Second Circuit issued split concurring opinions on whether a magistrate judge has the authority to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure" and, as a result, "[c]ourts have expressed concern that the conflicting conclusions in those opinions also potentially could apply to other grounds for sanctions, including under Rule 37 or the Court's

11

inherent power" (collecting trial court decisions from within the Second Circuit expressing uncertainty as to the scope of a magistrate judge's authority to impose sanctions after *Kiobel*). In that case, the court, "[i]n an abundance of caution . . . treat[ed Magistrate Judge Tomlinson's Memorandum and Order] as a Report and Recommendation." *Id.* at *10.

IV. Analysis

A. <u>**Plaintiffs' Motion to Compel Production of the Surveillance Footage is Moot**</u>

Based upon the affidavit of Robert Laboy, indicating that the surveillance footage Plaintiffs seek has been lost or destroyed, that branch of Plaintiffs' motion seeking to compel its production is denied as moot. *See Bail v. Dover Hospitality Servs.*, 09-CV-4191, 2012 U.S. Dist. LEXIS 102980, at *18-*19 (E.D.N.Y., July 23, 2012) ("As an initial matter, the Court agrees that it cannot grant the Plaintiffs' narrow request to compel the production of documents not in the Defendant's possession. . . ."); *Muhammad v. Wright*, 08-CV-473, 2011 U.S. Dist. LEXIS 41152, at *9-*10 (W.D.N.Y., Apr. 15, 2011) (denying motion to compel as moot based upon representations that such evidence did not exist); *Miller v. Praxair, Inc.*, 3:05 CV 402, 2007 U.S. Dist. LEXIS 14769, at *2-*3 (D. Conn., Mar. 7, 2007), *aff'd*, 408 Fed. App'x 408 (2d Cir. 2010) (same).

B. <u>**Plaintiffs Have Shown "Good Cause" For Taking an Additional Deposition After the Close of Discovery**</u>

As noted above, leave of court would not ordinarily be required for Plaintiffs to take the deposition of the author of the April 11 Letter. However, in order to

12

permit additional discovery after the July 11, 2012 deadline imposed by Judge Wall, good cause must be shown. The Court finds that Plaintiffs have made such a showing and grants a limited modification of the discovery schedule.

The Court finds that Plaintiffs' failure to depose the author of the April 11 Letter was not occasioned by a lack of diligence on their part. Rather, based upon the representations made on behalf of LIJ in the April 11 Letter, Plaintiffs reasonably believed that the surveillance footage had been preserved and secured and would eventually be turned over to Plaintiffs before trial. However, the Hospital Defendants' position subsequently changed and, only in opposition to the Plaintiffs' OTSC presently before the Court, did the Hospital Defendants, after a final search, conclude that they no longer have the footage. *See* Laboy Aff. ¶ 3. Thus, Plaintiffs' expressed concern about the Hospital Defendants prevailing on their summary judgment motion is well-founded—Plaintiffs would suffer prejudice if the Hospital Defendants were dismissed from this case without ever accounting for the missing surveillance footage or the April 11 Letter, which affirmatively represented that such footage was indeed preserved for use in this case.

The Hospital Defendants argue that a deposition of the April 11 Letter's author is unnecessary because: (i) Ian Macineirghe captured video footage of the underlying events from inside Southside on his cell phone; and (ii) any ambiguity as to the content of the April 11 Letter is removed by the Laboy Affidavit, which confirms that the video had been preserved and secured, but was subsequently lost. Neither argument has merit. First, not all video is created equal. In this case, the

quality of the two-minute cell phone video captured by Ian (annexed in CD format to the Stein Aff. as Exhibit "A") cannot reasonably be compared to security surveillance video. To the degree that footage was captured from additional vantage points, in different parts of Southside Hospital and its parking areas, and at varying times both before and after Ian and Tomas were present, Plaintiffs are entitled to view it. And, though as a practical matter Plaintiffs' demonstrative video evidence at trial may now be limited to the cell phone video, they are not consequently precluded from conducting further discovery that may support spoliation sanctions.

Second, the six-sentence affidavit of Robert Laboy does not sufficiently satisfy the Hospital Defendants' discovery obligation in this regard. Importantly, Laboy is not the author of the statements upon which Plaintiffs relied for their belief that the surveillance footage existed, and he was not subject to cross-examination in the preparation of his affidavit. Accordingly, the Court grants Plaintiffs a limited modification of the discovery schedule for the purpose of deposing the author of the April 11, 2012 Letter or, at Plaintiffs' discretion, a witness of comparable knowledge of the underlying facts on or before April 30, 2015.

### C. Requests for Jury Instructions Are Properly Made to the District Judge and Are Premature At This Time

Initially, as described above, the Court is without a clear directive concerning its authority to impose the requested spoliation sanction. Because Plaintiffs seek a specific sanction in the form of an adverse inference jury instruction, the Court, in an abundance of caution, refrains from deciding it in the absence of a referral order

from Judge Spatt or the consent of the parties. *See Estate of Jackson*, 2014 U.S. Dist. LEXIS 96355 at *10; *cf. Gomez v. United States*, 490 U.S. 858, 873-76, 109 S. Ct. 2237 (1989) (finding, in the related context of presiding over jury selection, that Congress did not intend the Federal Magistrates Act to embrace such function, which is "more akin" to the "dispositive" matters specifically listed in the statute).

In any event, in light of the Court's decision to permit additional discovery on the very issue of spoliation, the sanctions Plaintiffs seek are premature at this juncture. Accordingly, that branch of Plaintiffs' motion seeking an adverse inference charge arising from the alleged spoliation of evidence is denied without prejudice and with leave to renew before Judge Spatt at the appropriate time.

**V. Conclusion**

Based on the foregoing, the OTSC is granted in part and denied in part as follows: the branch of the OTSC seeking to compel production of the video surveillance footage is denied as moot; the branch of the OTSC seeking to modify the discovery schedule to take an additional deposition is granted; and the branch of the OTSC seeking sanctions in the form of an adverse inference charge based on spoliation of evidence is denied without prejudice and with leave to renew at the appropriate time before Judge Spatt.

Dated:  Central Islip, New York
        April 1, 2015            **SO ORDERED**

                                 s/ Steven I. Locke
                                 STEVEN I. LOCKE
                                 United States Magistrate Judge